STANISLAUS KUKIELSKI, complainant,

*v.*

ALBERT KUKIELSKI et al., defendants.

[Decided July 7th, 1924.]

**Wills—Construction—Perpetuities—Certain Beneficiaries of Unsound Mind—Trusts Created for Benefit of Heirs With Discretion as to Use by Trustee—Powers and Duty of Trustee.**

On bill for construction of will.

*Mr. James R. Bowen,* for the complainant.

*Mr. William C. Cudlipp,* for the defendant Albert Kukielski.

*Mr. Paul C. Supinski,* for the defendants Anastasia Mystkowska et al.

FIELDER, V. C.

Frank Kukielski died April 4th, 1918. The complainant, as trustee under the will, has filed his bill praying for a construction of certain provisions of the will and for instructions as to his duty with respect thereto.

The will gives all the residue of the testator's estate to his brother "during the lifetimes of my wife, Mary Ellen Kukielski, and my children, Albert Kukielski and Catherine Kukielski, and the last survivor of my said wife and children," in trust, to collect the rents from the real property and therefrom to keep said property in good condition, and pay such charges and liens as shall be imposed thereon, with power to sell and convey the same, and

"(3) The income and so much of the principal as to the trustee shall appear fit shall be, by the trustee, either paid over to my said wife Mary Ellen Kukielski and my said children Albert Kukileski and Catharine Kukielski, or any one or more of them, or shall be, by the trustee, applied to the care, maintenance and support of my said wife Mary Ellen Kukielski and my said children Albert Kukielski and Catharine Kukielski, or of any one or more of them, and to the expenses of the funeral and interment of my said wife Mary Ellen Kukielski and my said children Albert Kukielski and Catharine Kukielski, or of any one or more of them:

"(4) If, on the death of the last survivor of my said wife Mary Ellen Kukielski and my said children Albert Kukielski and Catharine Kukielski, any balance of the estate hereby given, devised and bequeathed in trust shall remain, such balance * * * shall be, by the trustee, paid, divided and distributed among those who, at the time of the death of the last survivor of my said wife Mary Ellen Kukileski and my said children Albert Kukielski and Catharine Kukielski, would be my legal heirs at law, *per stirpes* and not *per capita*."

The trustee is advised that the disposition of the trust fund does not violate the rule as to perpetuities, which is a rule against postponing the vesting of estates for a period extending beyond a life, or any number of lives, in being and twenty-one years thereafter. *Lembeck* v. *Lembeck, 73 N. J. Eq. 427; affirmed, 74 N. J. Eq. 848; In re Smisson, 79 N. J. Eq. 233, Canda* v. *Canda, 92 N. J. Eq. 425.*

For some years prior to the execution of the will and thereafter to the time of their deaths in an asylum, the testator's wife and daughter were of unsound mind and incapable of governing themselves or their affairs. At the date of the execution of the will, the testator's son was twenty-two years of age, of sound mind, unmarried, unemployed and subject to draft for service in the United States forces in the late war. Less than three months after the execution of his will the testator died. His daughter died intestate and without issue October 5th, 1919, and his wife died intestate June 6th, 1922. During the lifetime of the testator's wife and daughter, the trustee applied a portion of the income from the trust estate to their care, maintenance and support. The son enlisted in the army May, 1918, and was discharged July, 1919. In the year 1918, after the testator's death, the trustee gave the son $150, nothing in 1919, $50 in 1920 and nothing

thereafter. The reason assigned by the trustee for giving the son no more of the income, is that since his discharge from the army the son has had steady employment and has been able to support himself.

It appears that the trustee has been in doubt as to his powers and duties under the will. He seems to have thought that only so much of the income from the trust fund as was necessary for the care, maintenance and support of the *cestuis que trustent* should be used for that purpose, and that the balance should be retained by him. As I read the will, bearing in mind the situation and condition of the testator's family at the time of its execution, the testator intended that the entire net income of the trust fund should be paid to his wife and children, if they were capable of handling it, or if they were not, in the judgment of the trustee, then that he should apply the whole income to their care, maintenance and support. There is no direction in the will that the trustee shall use only a portion of the income for such purpose, or that he shall accumulate such portion of the income as he deems it unnecessary to expend and add such accumulations to the trust fund. The words "so much of," contained in clause three, refer to principal and not to income. The provision for the disposal of the fund after the death of the last survivor of the *cestuis que trustent* is, that if any balance of the *estate* given in trust shall remain, such balance shall be paid to the testator's heirs-at-law, which means unexpended principal and does not include income. If the total net income was not expended during the lives of the testator's wife and daughter, such part thereof as should have been expended for their benefit, but was not, belonged to their estate, and upon their death, intestate, passed to the son Albert, as their only next of kin, and such part as should have been expended for the son, but was not, belongs to him. No reason appears from the testimony why the trustee should not pay the income direct to the son, but the will gives the trustee discretion as to whether he shall do so, or apply it to his care, maintenance and support, and such discretion, if fairly and reasonably exercised, should not be interfered with. The

trustee is advised that all unexpended net income in his hands, and the whole of all future net income, should be paid to Albert, or, in the discretion of the trustee, used for his care, maintenance and support.

The will further directs that so much of the principal of the trust fund, as to the trustees shall appear fit, shall be paid over to Albert, or be applied to his care, maintenance and support. The intention of the testator was to permit the trustee to determine whether at some future time it would appear safe to turn over the whole, or part, of his residuary estate to his son. The testator's wife and children were the natural objects of his care and solicitude, and were the persons to whom he would desire his estate to go under normal conditions. When he executed his will his wife and daughter appeared to be incurably insane, and, of course, he would not bequeath and devise his residuary estate to them, but he desired that the whole of that estate should be used for their care and maintenance, if the income therefrom was insufficient for that purpose. There was, doubtless, the fear in his mind that the same malady which affected his wife and daughter might attack his son. The United States was then involved in the world war and the son was liable to service with the United States forces, and the father might have had in mind the possible enlistment and death of his son. It might also have been that his son was a spendthrift, or that the father doubted the son's ability, then undemonstrated, to manage and conserve an inheritance. For any of these reasons, or for all of them, or for some other reason, the testator did not deem it wise to give the *corpus* of his estate, or any portion thereof, immediately to his son, but realizing that his son might live and be fully competent to manage his affairs, he confided a discretion to his trustee to give the son, when he had demonstrated his fitness, the whole, or some portion of the *corpus,* or to apply the same to his care, maintenance and support.

In his answer to the bill of complaint, the son insists that the trustee should be instructed to turn the trust fund over to him forthwith. Prior to the filing of the bill, the son

made such demand on the trustee, but received no direct reply, possibly because the trustee was uncertain as to the extent of his powers and was not sure that the will authorized him to accede to such demand. Had he been certain that he could safely comply with the demand, he might have exercised his discretion and complied. In his testimony the trustee has not stated a refusal, or given any reason why he should refuse. He was willing at one time to give the son a sufficient sum to start him in business, and, had the son requested, would have given him money for his support, but shortly after the son was discharged from the army, he secured a position and has worked steadily, and has not only supported himself, but saved money from his earnings. He is, apparently, industrious and not a spendthrift, or unable to manage his own affairs. He is a graduate of a high school, and his testimony shows him to be a young man of fair education, and, at least, ordinary common sense. He is twenty-nine years of age, in good health, mentally sound and is contemplating marriage. It may well be that when the trustee is advised of his power and authority under the will, the trustee will see fit, in the exercise of his discretion, to pay over the trust fund to the son. At any rate, the trustee should be given the opportunity to exercise his discretion, and he is advised that he can safely pay the whole, or any portion of the fund, to the son, if he thinks it advisable so to do. It is his duty to pay it if he thinks it proper, and payment made by him in the proper exercise of the discretion committed to him, will discharge him from all further duty in respect to the fund and also from all liability for it.

The trustee is a brother of the testator, and in the event that the *corpus* of the estate is not paid over to the son, and the son shall die without issue, the trustee may be one of the heirs-at-law of the testator who will take the fund, and it may be suggested that such interest will affect the proper exercise of the trustee's discretion, and therefore the court should specifically instruct the trustee whether or not to pay the fund to the son. The testimony does not indicate that the trustee is influenced by any personal interest, and such

interest, after all, is rather remote, because if the son marries, as seems likely, and leaves issue surviving him, such issue will inherit as the heir-at-law of the testator. But the testator knowing that the provisions of his will gave his trustee a possible interest in the ultimate disposition of the trust fund, nevertheless, had confidence in his trustee, and committed to his judgment and fairness the determination of the fitness of his son to receive the fund, and such determination, when exercised in good faith, is binding upon all persons interested in the fund. The time to inquire into the trustee's good faith is after he has exercised his discretion and not before he has taken action.

Reference is made to the following decisions bearing upon the question of the powers and duty of the trustee: *Hardenburgh* v. *Blair, 30 N. J. Eq. 645; Pedrick* v. *Pedrick, 48 N. J. Eq. 313; reversed, 50 N. J. Eq. 479; Larkin* v. *Wikoff, 75 N. J. Eq. 462; affirmed, 77 N. J. Eq. 589; O'Gorman* v. *Crowley, 80 N. J. Eq. 101; affirmed, 81 N. J. Eq. 520; Turnure* v. *Turnure, 89 N. J. Eq. 197.*